When the Commission's Platform of Health Action called relationships and major expenses and labor costs and access to the equipment. I'd like to first start by asking. It was found that mechanism of injury in this matter occurred when Mr. Johnson stepped off the floorboard and onto the concrete floor. However, the mechanism of injury reported to the various providers of medical records and Mr. Johnson's testimony at the trial seemed contradictory. Excuse me, do you have a opposing counsel? Yes. Oh, you're sitting together? Yes. Oh. Yes. Everyone's allowed to get along. Oh, that's refreshing. So in the first account, Mr. Johnson's first record of treatment at Corvina St. Joseph Hospital was the day after the accident. Mr. Johnson stated that his left foot pain began when he was getting on and off the floor all day long. It became worse as the day went on. When Mr. Johnson was seen by Dr. Urbanowski on July 28, 2006, two days after the accident, he claimed that he injured his left foot when he was jumping on and off the forefoot all day on July 26th. He specifically denied any type of twisting injury occurring on that day. When he went to treat with Dr. Wood on October 26, 2006, so approximately three months afterwards, after the accident, he reported that he injured his foot when he stepped off the floor just once, stepped off the floor, but did not mention any twisting. He reported the same mechanism of injury, just the stepping off the floor just one time, to both. His expert on May 7, 2008, and Stephanie's expert on December 18, 2007. Not to try and belabor perhaps a subtle point, there's no question that he was injured at the work site stepping off a forklift. Is that really in dispute? Well, yeah, it was disputed the fact that an accident occurred manually. You are? Yes. Basically, what I'm trying to draw here, and I don't think that it's just a small discrepancy like the commission stated, is that in the initial records, he's saying he spent all day getting on and off this forklift. And he also says it progressively got worse as the day went on. And then in later records, he's just saying there's an acute accident, one step off a forklift, which is what ended up resulting in this accident. Well, if it happened either way, wouldn't it be compensable? Well, what I'm trying to show here is there's lots of contradictions within his testimony. Because he then afterwards testifies that, A, he just stepped off the forklift and got in an incredible accident. B, he testified there was a twist when it occurred, which he never stated in any of the records prior to that case. He also stated that he sat down. He testified that he sat down for the rest of the day. It did not work. Well, from all that, though, couldn't the commission determine that something happened and believe his testimony? I think that it's difficult to determine whether or not there was any accident whatsoever. He also stated that he reportedly had an accident, which is a contradiction to the fact that he sent all this records and that he asked for short-term disability and long-term disability rather than requesting what was compensation benefit. Those are all facts for the commission to then decide. And we only reverse if there's no evidence to support that. Well, and I guess what I'm trying to state is, and I agree with Commissioner Busurto, who wrote a dissent in this case, who stated that the arbitrator who initially saw this, who actually saw the testimony, didn't believe the testimony. Well, there's a real problem with Commissioner Busurto's dissent, isn't there? He's relying on an affidavit that the arbitrator did not admit into evidence. I don't think that Commissioner Busurto was actually relying on that. Well, part of what Commissioner Busurto says is the arbitrator should be affirmed because he rejected the petitioner's live testimony and instead agreed with an affidavit. And that shows how incredible the petitioner was. That's what Commissioner Busurto says. However, do you agree with me that affidavit was not admitted into evidence? And so that affidavit, after not being admitted into evidence, is then relied on by the arbitrator, right? Yes. And then, which maybe had something to do with who prepared the decision, I don't know, you know. But then the dissenting commissioner relied on that affidavit that had never been introduced into evidence. So there's no contradiction in the record, is there, to the petitioner's report that there was an accident? Well, I think there's contradictions within the report of the petitioner. And I do want to state that while I do agree that Commissioner Busurto did mention the affidavit in his dissent, however, he also stated, which I agree, that the arbitrator saw the testimony, and above and beyond the affidavit, he saw the testimony and he believed that he was not being truthful, that there were contradictions. And while I do agree that the arbitrator used the affidavit to make part of his decision on this case, there was other basis for the decision, the arbitrator's decision on this case. If the commission properly believed the petitioner, is there any dispute that he's entitled to the benefits he received? If an accident actually occurred? I guess that the reason I'm here is because I believe that the evidence within the record shows that there are contradictions in this. Well, where is there a contradiction? You mean that no accident occurred? Yes. Is that what you're saying? Yes, I'm saying that there was a problem. What's the medical history on July the 27th, one day after the events say? The medical history? The history that the doctor wrote in the emergency room record. He stated that he was getting on and off the truck all day long, and that his ankle became worse as the day went on. So, I mean, he made it up real quick, didn't he, that one day? Well, I'm not saying that he made it up, I'm just saying, well, I guess I am making it up. Well, of course you're saying that. You have to. You have to. You're saying he made it up. I mean, I can make up a lie in a very short amount of time also if I wanted to. Well, you don't want to impugn your credibility. Be careful. I'm not saying that. Be careful on this. Well, the question becomes. I can get this as being recorded. The question becomes, is there evidence in the record that supports his version of the events? And the answer to that has to be yes, there is. It's in the history of the hospital the very day after the event. But he testified. I guess what I'm trying to say is there's histories within the records that are contradictory that tell different events. So therefore, because they're contradictory, we shouldn't believe any of them? Yes. Okay. Because there's three different versions of the same story. Okay. One where he's on and off all day. One where he's on, steps down, and then doesn't work for the entire rest of the day. And then there's one where he's on, gets off, and twists his ankle. I mean, it just seems like how many different versions of this are there possibly? Just to clarify, and not to refine it to too fine of a point. So you would have to say that your case stands or falls in our determination of whether or not he was injured in the manner in which he describes at the workplace. Because you would have to concede, based on the testimony and the evidence of Dr. Hermanoski, Dr. Gross, and Dr. Wood, clearly there was a problem with his ankle, correct? That's not in dispute, is there? He has a medical condition. Right, he has a medical condition. Whether or not it was connected to or the result of something happening at work, that's what you're paying in your head. Well, we're, I mean, if this judge I'm talking about rose out of the course of work. Right. But if we were to find he rose out of the course of work, it happened on the job site as he describes, you can't contest there's no injury, correct? I know. All right. I just wanted to make sure. So let's just distill it to its finest. It's a credibility issue. Yes. And it's a commission call. And this is why I'm bringing up the dissent of Commissioner DeSarco, because he's the one who agreed that the arbitrator was the best judge of credibility. And he stated that. But that's not the law. The law is it's the commission that makes the determination of credibility, not the arbitrator. We review their decision, not the arbitrator. Right. So if that's the case, then how did the commission deal with these three narratives leading to a condition in his ankle? Basically what the commission said, and I quote, they called it minor discrepancies. That's what the commission stated. And it said that these were minor discrepancies. Well, and in order to accept your argument that there are these discrepancies, that requires that we believe that the medical providers who took these histories down got them exactly right the way he said it, correct? Yes. Okay. Has it been your experience that that always happens? Well, I think that there are typically minor discrepancies in medical records. However, I do believe that there is a difference between somebody saying they're on offer for a little all day long and saying I'm a one-step offer. I think that a medical provider would be able to distinguish between those. That's too big for somebody to get wrong. Well, but on the other hand, if we were just thinking in terms of a camera, okay? And you can stop at different frames. And so each frame is really just a snapshot of a continuing action. And could not the commission put it together that all three narratives can be reconciled? But, you know, we've got a snapshot here of that step down that's acute. But if I rewound it, I see him going up and down. Well, I guess my biggest concern, I understand what you're saying. My biggest concern is the fact that I just feel that if you look at the evidence in total, and I know I'm somewhat belaboring this point, but if you look at the evidence in total, you see that the contradictions are enough that while you can see these snapshots, it's really a credibility issue as to whether or not this man actually told the truth. I mean, it seems like there's too many... Well, I mean, the versions aren't that much different, are they? Well, I think there's a big difference between saying that you had one wound injury and that your injury resulted from all the... Now, this man testified that he stepped off a forklift at 10 o'clock in the morning, and that's when he sustained this injury. The other accounts are that he was on and off all day long, and he came across as the worst. Did he work his full shift? Yes, but he testified to the fact that after he had the step down, he sat down, he took his shoe off, and he rested for the entire day. He also claimed that he had a co-worker who witnessed the accident, who was not there to testify, who, you know, who had been at his job for the rest of the day. So that's his testimony. He sat down, and he took his shoe off. He also didn't learn anything from the fact of this. The second issue that I wanted to deal with is causal relationship. In my briefs, two out of the five doctors Mr. Johnson was treated with were examining priors or orthopedic surgeons that specialize in foot and ankle disorders. Dr. Vargo and Dr. Holmes. Both Dr. Vargo and Dr. Holmes diagnosed Mr. Johnson with tendinosis. The deposition of Dr. Vargo wasn't taken, but Dr. Holmes described tendinosis as occurring when a tendon degenerates and testified that it is unrelated to a specific traumatic event. The commission makes its finding of causal relationship on the opinion of Mr. Johnson's expert, Mr. Gross, or Dr. Gross, a doctor who was more certified in ambulatory medicine, and Dr. Wood, a podiatrist, who does not have a seating in the record, so we don't know his credentials are, or whether or not he was certified, and primarily treated Mr. Johnson with orthotics and an unrelated foot fungus. In addition, Dr. Wood and Dr. Gross diagnosed Mr. Johnson with tendinitis, a condition that Dr. Gross and Dr. Holmes testified resulted from a repetitive trauma. What about Dr. Urbanowski? What was his conclusion? Diagnosis-wise, I believe he was diagnosed with tendinitis also. And so, given the fact that Dr. Wood and Dr. Gross diagnosed Mr. Johnson with a condition which is considered repetitive, and testified to be considered acute, that seems to apply in the face of accepting their testimony prior, or giving it more weight than that of Dr. Garbo or Dr. Holmes. Those reasons, we state that. And the reasons stated in the brief, we state the commission's decision as a causal relationship. The evidence has to be reversed. The final issue that I wanted to deal with is the extent. I'm sorry? You have about a minute. Okay, I'll do it real quick. The commission awarded 20% plus a foot on this case, and as Mr. Johnson did not undergo surgery, and was able to return to work full duty in his pre-action position, we believe that this amount is excessive. Petitioner's only, or Mr. Johnson's only claim on going to the patient was his inability to jog. However, there's no testimony as to how much he used to jog prior to the accident, and how the real extent of the limitation on his ability to jog. What do you suggest would be the proper award? For tendinosis, I would believe, if this matters to you, that the proper award would be 7.5%. How much? 7.5%. Which I believe was something that was offered. You'll have time on the bill. Counsel, please. Thank you, Mr. Clark. My name is Mark Weisberg. Are you still getting along with the opposing counsel? Now we're at different tables. I don't know. We'll see. So far, so good. There are two main issues, and I guess a tag-on issue that we've discussed so far. I'll be brief on all of them. As to the accident, I don't think there's really any question. He did what I wish all of my clients would do. He went to the doctor the very next day. If I could get all of my clients to do that, I'd have a much easier job. He gave a history for a work accident. Again, A+. This is a guy who did all the things that we're always hearing complaints about in other cases that they didn't do. He did those things. Aha, but she says that he's given inconsistent histories. Therefore, he's entitled to no credibility. Well, I think that's a leap. If he gave inconsistent histories, which, of course, we have no way of knowing, what we do know is that various doctors recorded histories that were not honored sentences. I don't think that that's very troubling, but even if those were his verbatim words of what were recorded, I don't think we have a real problem here. I think because he was unsophisticated in medical matters, he doesn't know what's important to the doctor. He certainly doesn't know what's going to be important in terms of issues of causation later on in a worker's compensation case. Even most doctors will admit to you that they tend not to think in terms of causation. They think in terms of treating the patient. They wonder, what's the diagnosis and how do I fix it? They really don't care how this happened. The only reason it ever comes up is because they get asked it so often by lawyers to have them do that. So these types of descriptions that we get in medical records, this is something that the doctors are particularly interested in doing in the first place. I don't think there's any... Well, a good diagnostician would be very interested in it, I hope. Well, I've been told otherwise. I guess if we're talking about specific mechanics, mechanism of injury, that certainly can help. But in terms of was he getting on a truck or was he getting on a forklift or was it maybe a box or a step ladder, they don't really care. In this case, whether or not it happened in one single event or all day long would be relevant to the diagnosis, wouldn't it? Well, I don't see any evidence to support that conclusion. But if I can see that point and say that's important, I'd say they took the history to the extent that they needed to to draw their conclusion down and add whatever value that would have for them. They still had to do all the diagnostic tests anyway. They still had some provisional diagnoses that they're under advised. So I think even with the history, they still had to go through the motions that a doctor had to go through. In many cases, these histories depend on the relative competence of the physician in the use of the English language, too, doesn't it, Don? Well, one hopes they're good at English. I don't know.  Certainly is a consideration. As to the issue of accidents, we have his testimony, we have his history. Did a co-worker observe the accident, too? His testimony was that he told a co-worker that he injured himself. And it's fine to mention that the co-worker really called his witness. Of course, it's difficult to call someone who still works for the employer. So if they wanted to call that individual, that would have been something that they could have done. If you ask him, he might be able to help. So he wants to take judicial notice of the fact that it's difficult to call a co-worker, is that it? I don't think I need you to do that, but I would ask that you do that. I think that's something that comes up fairly frequently. So because the employer didn't call the co-worker, you can therefore find that the co-worker's testimony was favorable to the plaintiff? I'm not going that far. Oh, okay. I'm just saying I wouldn't find it against the petitioner to forget to call his or her co-worker who must do this job. I wouldn't draw any conclusions to that versus to the petitioner based on that. I can see why the two of you have been alone. As to the issue of causation, I think it's amusing to look at the testimony of Dr. Holmes to correct the cross-exam. His testimony is that it was a coincidence that Mr. Johnson was stepping down off the court level. At the moment, his condition went from asymptomatic to asymptomatic. It's rare that we get an IMU doctor to take such a bizarre position, but sometimes they do and they stick to it. Dr. Holmes, despite his qualifications, decides to take the job. Would you expect an IMU doctor to be objective in the traditional sense of the phrase, regardless of who the doctor is testifying for? I wouldn't expect that. My folks seem to be disappointed over and over. They do a better job than that. To say that it's a coincidence strengths credibility. We're going to talk about credibility in this case. It's Dr. Holmes whose credibility really is damaged by this record. We'll look at the other testimonies on the other side. They're easily adopted. Of course, we have the issue of no symptoms, no condition of LV, a specific workplace incident, followed by symptoms, which standing alone is the basis for finding causation. Finally, as to the issue of the nature and extent, I certainly could ask for more. So far, I think that what was awarded was fair. My folks were very much in agreement. I think the percentage of the work is fair based on the testimony you testified. We continue to have patients left to continue wearing orthotics and doing stretching exercises on an ongoing basis. I would ask that the award has been received. That's all there is to it. Any further questions? We're all set. Thank you very much. First thing, counsel stated that it was a call to order. I believe we have a process, a subpoena process that would allow him to call an order if that was necessary. The second thing is that in his brief and today, it's stated that the opinions of Dr. Holmes are absurd. However, Dr. Holmes, as stated, is a very well-credentialed expert in foot conditions and obviously more well-credentialed in regards to foot conditions. There's a famous, famous dissenting opinion in a case called Sears v. Rupenhauser that was written by Marvin Dunn, later became the basis of a Supreme Court decision. It said the handling of an expert witness can be summed up in the adage of the sage, whose bread I eat is whose song I sing. Well said. However, I do still think that... Don't look that way. I know. I still believe that the credentials of Dr. Holmes are more impressive. Unassailable? Yes. And more impressive, we should carry more weight than those of a doctor who was, were certified in those organizations. Who, you know, in his CV, you can see not one article has foot conditions. And no fellowship, none of this was voted. So, that's all I have. Thank you. Thank you, counsel. The court will take the matter under driver for disposition. Clerk, please call the next case.